STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Bruce SOLBERG, Defendant-Appellant.

Supreme Court

*No. 95–0299–CR. Oral argument May 28, 1997.—Decided July 1, 1997.*

(Also reported in 564 N.W.2d 775.)

BRADLEY, J., concurs.
ABRAHAMSON, C.J., joins.
BABLITCH, J., dissents.

For the plaintiff-respondent-petitioner the cause was argued by *Marguerite M. Moeller*, assistant attorney general, with whom on the briefs was *James E. Doyle*, attorney general.

For the defendant-appellant there was a brief by *John M. Brinckman*, and *John Brinckman & Associates*, LaCrosse and oral argument by *John M. Brinckman*.

For Potential Victims who would object to *In Camera* inspection of Medical or Mental Health Records by

Trial or Appellate Courts there was a brief and oral argument by *Christine M. Wiseman*, Professor of Law, Marquette University Law School.

¶ 1. JON P. WILCOX, J. This case is before this court on a petition for review filed by the State of Wisconsin. The State seeks review of a published opinion of the court of appeals, *State v. Solberg*, 203 Wis. 2d 459, 533 N.W.2d 842 (Ct. App. 1996). A jury found Bruce Solberg guilty of one count of third degree sexual assault in violation of Wis. Stat. § 940.225(3) (1995–96).[1] Solberg filed a motion for a new trial claiming ineffective assistance of counsel. The Circuit Court for La Crosse County, John J. Perlich, Judge, denied Solberg's motion. Solberg appealed his judgment of conviction. He alleged that the circuit court erred in failing to disclose the complainant's, E.H., medical records to him, and in not allowing him access to police reports concerning a prior sexual assault investigation involving E.H. On appeal, Solberg also alleged ineffective assistance of counsel. The court of appeals reversed the conviction and remanded to the circuit court to determine whether the victim, E. H., had consented to the court's *in camera* examination of her medical and psychiatric records. We reverse the decision of the court of appeals.

¶ 2. On review, we consider: (1) whether the court of appeals had the authority to conduct an *in camera* review of the privileged medical and psychiatric records; and (2) whether the circuit court erroneously exercised its discretion in determining that the records should not be disclosed to Solberg. We

---

[1] Unless otherwise indicated, all future statutory references are to the 1995–96 volume.

hold that the trial court, and, thus, the court of appeals, had the authority to conduct an *in camera* review of E. H.'s medical and psychiatric records and that the circuit court did not erroneously exercise its discretion in determining that the records should not be disclosed to Solberg.

¶ 3.  The relevant facts are not in dispute. Solberg and E. H. met at St. Francis Hospital. E. H. had been admitted for a drug overdose and Solberg was employed at the hospital as an aide. They subsequently engaged in a sexual relationship lasting from early 1992 through December of 1992. On January 4, 1993, they renewed this relationship. On January 13, 1993, Solberg visited E. H. at her apartment. During this visit Solberg and E. H. engaged in anal intercourse. Based on E. H.'s allegation that she did not consent to this intercourse, Solberg was charged with one count of third degree sexual assault contrary to Wis. Stat. § 940.225(3).

¶ 4.  Before trial, Solberg filed a "Motion for Release of Medical Records." In this motion, Solberg requested medical and psychiatric records regarding E. H.'s admission to the St. Francis Hospital Psychiatric Unit on December 25, 1991, and her treatment during that period. Solberg alleged that these records were necessary for him to establish a partial alibi and to impeach E. H.'s credibility. The motion also made a general request for medical and counseling records without specifying the time frame or health care provider. Solberg alleged that such records would have verified that E. H. had made prior false accusations of sexual assault. Finally, Solberg sought access to counseling records in which E. H. discussed the incident resulting in the sexual assault allegations against Solberg with Nancy Todd and Pauline Jackson.

375

¶ 5. In a written response to this motion, the prosecutor conceded that Solberg had made the preliminary showing of materiality established in *State v. Shiffra*, 175 Wis. 2d 600, 499 N.W.2d 719 (Ct. App. 1993), to entitle him to an *in camera* review by the circuit court of E. H.'s records. In this letter, the prosecutor also represented that E. H. had informed her "that she will sign a release allowing the medical and psychiatric records to be provided to the court in a sealed envelope for an in camera review."

¶ 6. On July 9, 1993, the circuit court held a hearing on this motion. At that hearing, the court stated:

> Well, it's my understanding the State has agreed that they will obtain the records from the victim, that she apparently has already signed or has agreed to sign a release so that they can get the records.
>
> . . . I would ask that the State get the records. File them in a sealed envelope with my secretary for an in camera inspection. . . . I expect to be getting back some time that weekend and will probably have some time to review them that weekend, although it may take a bit longer.

¶ 7. Prior to a hearing on September 7, 1993, the circuit court inspected the medical records that had been filed for its review. These records related to Dr. Krummel's treatment of E. H. Based on its review, the court concluded that "99 percent of them are basically and totally irrelevant and immaterial." The court further stated:

> There is one thing, however, that may be relevant. There is a comment in the discharge summary of the Saint Francis Medical Center, and I believe it occurs one other or maybe two other places. It's the

376

same comment, quote "She has been developing a lot of flashbacks of sexual abuse she suffered at the hands of blank, as well as a sexual assault that occurred at age 19." Quoting again, "She started having a lot of flashbacks . . ."

I don't know if its relevant or not. And I don't know if I'm even competent to decide the relevancy of that.

The court declined to make a determination on the relevancy of these references. The circuit court instead made the following proposal:

My solution would seem to be that the State contact the physician, ask for more information on that direct point as to how it may relate to this incident, or even elaborate a little bit more about what the doctor meant by flashbacks.

At that point I may or may not disclose it to the defense.

The court gave both counsel the opportunity to consider the proposal.

¶ 8.   At the next hearing, on November 1, 1993, the circuit court agreed to go through the record again and have the copies of those portions that referred to flashbacks provided to counsel. The prosecutor also disclosed that the State had in its possession police reports concerning a prior sexual assault investigation in which E. H. was the alleged victim.[2] The prosecution

---

[2] The State indicates in its brief that on February 20, 1997, it learned that the prosecutor had in her possession some of the medical and psychiatric records. The material was apparently appended to police reports concerning a prior incident involving the victim, which the trial court found did not have to be disclosed to the defense. We do not consider whether the circuit court should have allowed Solberg access to the police report.

filed this report with the court and asked the court to review it *in camera*. The court agreed. On November 8, 1993, the court sent both counsel copies of those portions of E. H.'s medical records that referred to flashbacks, blocking out all other material.

¶ 9.   On November 12, 1993, another hearing was held at which defense counsel stated that although she had received the limited records relating to flashbacks, Dr. Krummel was unwilling to discuss the records without a court order. The circuit court asked the State's position on whether the court could issue an order authorizing Dr. Krummel to discuss flashbacks with defense counsel. The prosecutor responded that she wanted to discuss it with the victim:

> I'm thinking the victim should have something to say about it. I think when I speak with her she will probably agree as long as there are safeguards.

*Id.*

¶ 10.   At the next hearing on November 17, 1993, the prosecutor advised the circuit court that the victim would prefer to have the court or a State agent interview Dr. Krummel: "If the Court thinks that the *Shiffra* rationale requires the victim to give up her right to privacy and allow her doctors to be questioned, then the victim would prefer that the Court or a State agent interview the doctor." Accordingly, the court stated that it would interview Dr. Krummel to determine whether the references to flashbacks in the medical records would be of any benefit to Solberg:

---

Accordingly, we also do not consider whether the records which are attached to those police reports should have been disclosed to Solberg.

I will contact the doctor for the sole and exclusive purpose of determining whether or not his references in the medical records to quote "flashbacks" unquote may have any benefit to the defendant whatsoever.

The court allowed the defendant to submit questions that the court would ask Dr. Krummel if it deemed them relevant:

To assist me in that, I will give the defense 48 hours to deliver a list of questions or areas that the defense wishes me to explore, and I will explore them with the doctor, if in fact, I find them to be relevant.

¶ 11. At the November 17, 1993, hearing, the court also clarified its initial conclusions regarding E. H.'s records:

Let's not go too much farther here without redefining what the Court said. I reviewed all of the medical records. There was nothing in any of those medical records that in any way helps or assists this defendant.

The only thing in the medical records was the minimal reference on, I think perhaps two occasions, that she was having flashbacks about sexual abuse.

There has not been, up to this point in time, a shred of evidence that connects the flashbacks to anything that occurred here, and I'm not competent to do that.

¶ 12. On December 13, 1993, the circuit court stated that it had asked all of the questions submitted by defense counsel. The court concluded that nothing in the records could be of assistance to the defense, and

379

described the conversation with Dr. Krummel as follows:

> In essence, she was experiencing a flashback, which means that a person is reexperiencing a past event.
>
> At times she would report a past sexual assault of a particular person — or by a particular person, and she reported that particular person. There was no triggering event, although he did indicate that it's possible that sexual contact could trigger a flashback. It's speculative, but not out of the realm of possibility.
>
> The part that I found most important was Question Number 8, that is, How would this affect a patient's perception of reality? And in the doctor's opinion, she would know reality at all times. She would be able to identify the flashback, identify that it was a flashback, and recognize it as such. During that time she would perceive reality at all times. She would be kind of anxious and upset and would curl up into a ball and would report that she was having a flashback. She would be given support and perhaps medication, and it would pass in a short time, perhaps half an hour.
>
> As to Questions Number 10 and 11, he couldn't say, that is, Is it possible that the patient believed that she said no out loud and really didn't?
>
> No opinions regarding some of the other questions, speculative at best.
>
> Number 16, it's possible that a person might not know that she was experiencing a flashback. Another person, a third person, might not know she was experiencing a flashback, but she would know.

> So as I see it, she knew full well when she was having a flashback. She was able to tell reality from the flashback.
>
> I don't see anything with that explanation, in her prior medical records that in any way helps or assists the defense.

Accordingly, the circuit court did not allow Solberg access to the records and ordered them sealed.

¶ 13.   E. H. testified at trial. Defense counsel did not attempt to use the information concerning flashbacks in any way. The jury found Solberg guilty as charged. On September 2, 1994, Solberg filed a motion for a new trial, alleging ineffective assistance of trial counsel. The circuit court denied Solberg's motion.

¶ 14.   Solberg subsequently filed a notice of appeal from the judgment of conviction. On appeal, he alleged that the trial court erred in failing to disclose E. H.'s medical records and the police reports to the defense. He also alleged ineffective assistance of counsel. The court of appeals found that the record did not contain sufficient evidence of E. H.'s consent to review of her otherwise privileged medical and psychiatric records. The court of appeals did not reach the issues of whether Solberg was entitled to a new trial due to ineffective assistance of counsel or whether Solberg should have had access to the police reports of a prior uncharged sexual assault.

I.

¶ 15.   The first issue that we consider is whether the court of appeals lacked the authority to conduct an *in camera* review of E. H.'s records. The court of appeals concluded that it did not have the authority to conduct such an inspection:

To determine whether the trial court erred in not providing defense counsel with Elizabeth's psychological records, we would need to independently review them. However, because it is not apparent from the record that Elizabeth voluntarily consented to the court's review of the psychological records in question, we are statutorily prohibited from conducting our own *in camera* review of the records to determine whether they are relevant or exculpatory.

*Solberg*, 203 Wis. 2d at 462–63 (footnote omitted). The court of appeals made this determination because it did not believe that the trial record adequately demonstrated that E. H. had consented to the circuit court's review of her records:

From our review of the trial court record, we did not discover either a written consent form or an on-the-record authorization from Elizabeth stating that she waived her privilege with regard to Dr. Krummel's records. Although it is implicit in the record that Elizabeth signed some sort of release, we decline to infringe upon Elizabeth's privilege without express consent to do so.

*Id.* at 466.[3] Based on its decision that it did not have the authority to examine the records, the court of appeals never opened the sealed envelopes.

---

[3] The State suggests that the court of appeals held that it did not have authority to review the records because there was not a separate authorization for review by E. H. for the court of appeals. We do not believe that this was the holding of the court of appeals. In either case, we see no basis to require separate authorization for the circuit court, the court of appeals, and this court. So long as the circuit court has the authority to conduct an *in camera* review, the court of appeals and this court must also be able to review the records. To hold otherwise would

¶ 16.   Whether the court of appeals had the authority to examine E. H.'s records is dependent on whether the circuit court appropriately conducted an *in camera* inspection of the records. If the circuit court had the authority to review the privileged records, then the court of appeals also had the authority to do so. A circuit court should conduct an *in camera* review of privileged medical records when the defendant makes a "preliminary showing that the sought-after evidence is material to his or her defense,"[4] and the privilege holder consents to review of those records. In this case, the prosecutor conceded that Solberg had made the preliminary showing required to gain an *in camera* inspection by the circuit court. Accordingly, we must determine whether E. H. consented to review of her records.

¶ 17.   Pursuant to Wis. Stat. § 905.04(2) a patient has the privilege to refuse to disclose and to prevent others from disclosing confidential communications made for purposes of diagnosis or treatment.[5] "A privilege holder waives the privilege if he or she voluntarily

---

preclude appellate courts from reviewing the decision of a circuit court.

[4] *Shiffra*, 175 Wis. 2d at 605 (citations omitted).

[5] Wis. Stat. § 905.04(2) provides:

> (2) GENERAL RULE OF PRIVILEGE. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made or information obtained or disseminated for purposes of diagnosis or treatment of the patient's physical, mental or emotional condition, among the patient, the patient's physician, the patient's registered nurse, the patient's chiropractor, the patient's psychologist, the patient's social worker, the patient's marriage and family therapist, the patient's professional counselor or persons, including members of the patient's family, who are participating in the diagnosis or treatment under the direction of the physician, registered nurse, chiropractor, psy-

discloses or consents to disclosure of any significant part of the matter or communication." *State v. Speese*, 191 Wis. 2d 205, 217–18, 528 N.W.2d 63 (Ct. App. 1995), *rev'd on other grounds*, 199 Wis. 2d 597, 545 N.W.2d 510 (1996).

¶ 18. The State contends that E. H. consented to the circuit court's review of her records and that proof of this consent can likely be found in the sealed records. In a motion to reconsider filed with the court of appeals, in its briefs with this court, and at oral argument, the State repeatedly asserted that the sealed records were likely to contain the required release from E. H. In support of this contention, the State submitted an "Authorization for Release of Information" form that was signed by E. H. This form authorized St. Francis Medical Center to release E. H.'s health care records to the circuit court. The form stated: "This authorization will expire 120 days from the date below." According to the State, this form was found in the prosecutor's files. The State asserted that another copy of this form could likely be found in the sealed records.

■

¶ 19. We believe that in determining whether a patient has consented to the circuit court's review of privileged records, it is appropriate for an appellate court to open the sealed documents and ascertain whether the required release is sealed inside. Accordingly, we opened the sealed records for the purpose of determining whether they contained a release. We found that they did in fact contain a copy of the release that the state attached to its brief. This release, signed by E. H., evinces the consent necessary for the circuit court's review of the privileged medical records. *See*

chologist, social worker, marriage and family therapist or professional counselor.

*Steinberg v. Jensen*, 194 Wis. 2d 439, 459, 534 N.W.2d 361 (1995) ("the patient is deemed to own the privilege and, accordingly, only the plaintiff may waive the privilege.") (footnote omitted).[6] The authority of the circuit court to review the records is also applicable to appellate courts reviewing those records in the same case.

## II.

¶ 20. The second issue that we consider is whether the circuit court erroneously exercised its discretion in determining that the records should not be

---

[6] In reaching this conclusion, we do not approve such a release as the best means of attaining a victim's consent to review privileged documents. The better practice is to have the circuit court interview the victim on the record and thereby make a determination of the victim's voluntary consent. In the alternative, the release should show that the victim's consent is voluntary by using language designed to notify the victim that they need not sign the release.

To ensure that the interests of potential victims were represented in this case, we appointed Christine Wiseman, Professor of Law, Marquette University Law School, to advocate their rights. In this capacity, Professor Wiseman filed a brief on behalf of potential victims and presented their case at oral argument. Although we take into account the interests of victims generally in this case, E. H. has at no time objected to the circuit court's review of her medical records or to its conversation with Dr. Krummel.

The trial record in this case leaves unanswered questions concerning the scope and nature of E. H.'s consent for review of her medical records and disclosure of confidential communications. Although we are troubled by these uncertainties, there is no issue presented as to E. H.'s consent. Therefore, having found E. H.'s release for the circuit court's review of her medical records, we do not further scrutinize the scope of this consent.

disclosed to Solberg. The circuit court's materiality decision is reviewed under the clearly erroneous standard. *Shiffra*, 175 Wis. 2d at 605–06, citing *State v. Turner*, 136 Wis. 2d 333, 343–44, 401 N.W.2d 827 (1987); *see also State v. Walker*, 154 Wis. 2d 158, 191, 453 N.W.2d 127 (1990), *cert. denied, Wisconsin v. Walker*, 498 U.S. 962 (1990). The decision to exclude evidence lies within the sound discretion of the circuit court. *State v. Lindh*, 161 Wis. 2d 324, 348–49, 468 N.W.2d 168 (1991). A circuit court properly exercises its discretion when it applies the relevant law to the applicable facts and reaches a reasonable conclusion. *State v. Robinson*, 146 Wis. 2d 315, 330, 431 N.W.2d 165 (1988).

¶ 21.   Solberg contends that the circuit court erroneously exercised its discretion in not disclosing E. H.'s records to him. Solberg primarily bases this contention on what is known and what is not known about the circuit court's discussion of flashbacks with Dr. Krummel. Solberg points out that the circuit court disclosed that Dr. Krummel stated "it is possible that a person might not know that she is experiencing a flashback," and that he indicated that sexual contact could trigger a flashback. Solberg further asserts that without a more complete record of the conversation it is not possible to evaluate Dr. Krummel's statement to the circuit court that E. H. would know when she was having a flashback and that she could distinguish between a flashback and reality.

¶ 22.   In conducting an *in camera* inspection of an alleged victim's privileged records, the circuit court must determine whether the records contain any relevant information that is " 'material' to the defense of the accused." *Pennsylvania v. Ritchie*, 480 U.S. 39, 58 (1987). If the circuit court determines that the records

contain such information, that information should be disclosed to the defendant if the patient consents to such a disclosure. If the records do not contain relevant information material to the defense, the circuit court must not disclose the records or any information therefrom to the defendant.

¶ 23.  Such a procedure strikes an appropriate balance between the defendant's due process right to be given a meaningful opportunity to present a complete defense[7] and the policy interests underlying the Wis. Stat. § 904.05(2) privilege. We described the public policy behind the privilege in *Steinberg*, 194 Wis. 2d 439. In that case, we stated:

> The public policy underpinning the privilege is to encourage patients to freely and candidly discuss medical concerns with their physicians by ensuring that those concerns will not unnecessarily be disclosed to a third person. *Id.* at 459. We believe that giving the defendant an opportunity to have the circuit court conduct an *in camera* review of the privileged records, while still allowing the patient to preclude that review, addresses both the interests of the defendant and the patient.

██

¶ 24.  We must determine whether the circuit court properly exercised its discretion when it determined that E. H.'s records were not material to Solberg's defense. After conducting our own *in camera* review, we are unable to conclude that the circuit court erroneously exercised its discretion when it determined that the information contained in E. H.'s records, including the flashback information, would

---

[7] *See California v. Trombetta*, 467 U.S. 479 (1984).

not have assisted Solberg in his defense. Accordingly, we must uphold the decision of the circuit court.

¶ 25. We reach this conclusion despite the approach employed by the circuit court in ruling on the materiality of the medical records. It is clear that the circuit court was initially skeptical about the materiality of the flashback references. This is readily apparent when on November 17, 1993, the circuit court stated:

> The only thing in the medical records was the minimal reference on, I think perhaps two occasions, that she was having flashbacks about sexual abuse.
>
> There has not been, up to this point in time, a shred of evidence that connects the flashbacks to anything that occurred here, and I'm not competent to do that.

Despite its apparent misgivings, the circuit court gave Solberg the benefit of the doubt and interviewed Dr. Krummel to obtain more information on whether the flashback information could be material to Solberg's case.

¶ 26. Although we do not endorse the circuit court's failure to record its conversation with Dr. Krummel, we believe that it provides a satisfactory basis to conclude that the circuit court did not erroneously exercise its discretion. The circuit court described its conversation with Dr. Krummel and indicated the significance it placed on various comments. The circuit court placed particular importance on Dr. Krummel's statement that despite the flashbacks, E. H. would have known the difference between the flashbacks and reality at all times. Accordingly, we do not believe that the circuit court erroneously exercised its discretion when it concluded: "I don't see anything with that

explanation, in her prior medical records that in any way helps or assists the defense."

¶ 27.   As we do not consider whether the defendant should have been allowed access to the police reports that the prosecution turned over to the circuit court and whether Solberg's trial counsel was ineffective, we remand to the court of appeals for a determination of these issues. Thus, we reverse the decision of the court of appeals and remand to the court of appeals for further proceedings.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the court of appeals.

¶ 28.   ANN WALSH BRADLEY, J. (*concurring*). I concur. I write separately because I believe that the majority unnecessarily and unwisely reaches out to answer a question in this complex case while leaving in limbo related questions of equal or greater importance. The result of the majority's approach is the piecemeal resolution of issues with far-reaching implications.

¶ 29.   This case comes to us in an unusual posture. As a basis for appealing his conviction in the circuit court, Solberg alleged ineffective assistance of counsel. However, the ineffective assistance of counsel claim is not before us and was not even briefed. Rather, the State challenges the court of appeals' holding that the record did not contain sufficient evidence of E.H.'s consent to the court of appeals' review of her medical and psychological records. As it reaches this court, the case has blossomed into a myriad of factual, constitutional, statutory, and public policy issues. These issues center on the tension between a patient's statutory right to deny access to his or her medical and psycho-

logical records on the one hand, and a defendant's constitutional right to present a defense on the other.

¶ 30.  The issues presented are important, complex, and interrelated. Defense counsel noted at oral argument "the issues we are here on today are extremely important. . .and this court will no doubt, whatever its decision, be having quite an effect in the future on the course of the law." The Assistant Attorney General stated that "this is probably the most difficult area of law quite honestly that I've ever confronted in my twenty-some years doing appellate work, because there are so many strands. . . ." I agree and believe that this court would benefit greatly from the court of appeals' prior consideration of the issues presented in this important and unusually complex case.

¶ 31.  Like the majority, I conclude that the court of appeals should have searched for, and would have found, the requisite consent by E.H. to an *in camera* review of her medical and psychological records. E.H.'s consent to the circuit court's *in camera* viewing of her records also constitutes consent for the same viewing in the appellate courts because a contrary rule would effectively preclude appellate review of circuit court rulings based on privileged records.

¶ 32.  Unlike the majority, I would stop after resolving the threshold issue of consent. The majority offers no reason for reaching beyond the consent issue to deal with relevance while declining to deal with other significant issues. The result is this court's piecemeal consideration of interrelated issues that might be resolved as a whole by the court of appeals after full briefing. The majority's installment approach to this case runs the risk of unintentionally deciding one issue by addressing another related issue.

¶ 33. Having determined that E.H. consented to an *in camera* review of her records, I would remand to the court of appeals, not merely on the limited issues identified by the majority, but for a full consideration of Solberg's ineffective assistance of counsel claim, as well as any other outstanding issues. Among the questions that the court of appeals might consider after full briefing are the following:

- Is the Wis. Stat. § 905.04 privilege absolute?

- May a person waive the privilege as to a judge's *in camera* review of records, while still preserving the right to refuse release of the records to a defendant?

- If the privilege holder does not consent to the release of relevant information to the defendant, to what, if any, remedies is the defendant entitled?

- Does a privilege holder's consent to an *in camera* review of records extend to a court's conversations with the holder's doctor conducted after the period of time specified in the consent has passed?

- To what extent does release of privileged records to law enforcement agents constitute waiver of the privilege?

The court of appeals' answers to these questions would go a long way toward resolving the many troubling issues raised in cases like the present one.

¶ 34. Finally, the majority has compounded its improvident consideration of the circuit court's relevance ruling by conducting a superficial review of the issue. The majority's analysis of the relevance issue is limited to a one-sentence adoption of the circuit court's ruling on the matter:

> After conducting our own *in camera* review, we are unable to conclude that the circuit court erroneously exercised its discretion when it determined that the information contained in E.H.'s records, including the flashback information, would not have assisted Solberg in his defense.

Majority op. at 387. After reviewing the majority's relevance analysis, I am left wondering whether the treatment given by the majority to the circuit court's ruling is sufficient to dispose of the relevance issue. The issues presented in this case are significant, intricate, and intertwined, and deserve more than cursory treatment and a piecemeal approach.

¶ 35. For the foregoing reasons, I concur.

¶ 36. I am authorized to state that Chief Justice Shirley S. Abrahamson joins this opinion.

¶ 37. WILLIAM A. BABLITCH, J. (*dissenting*). This case is not a close call. Despite that, the majority accedes to the discretionary call of the circuit court. They do this without benefit of review of the single most determinative factor in Judge Perlich's decision: his conversation with Dr. Krummel regarding the medical records of the alleged victim. The judge, in refusing to turn over the records to the defendant, relied heavily on his conversation with Dr. Krummel. Unfortunately, we are unable to review that conversation and what it revealed. We are forced to depend on the judge's memory of that conversation. It was not recorded.

¶ 38. The significance of Dr. Krummel's statements was profound. I conclude that Judge Perlich's failure to record his conversation with Dr. Krummel was plain error. *See State v. Sonnenberg,* 117 Wis. 2d

392

159, 177, 344 N.W.2d 159 (1984). Accordingly, I respectfully dissent.

¶ 39.  After an *in camera* review of E.H.'s records, Judge Perlich concluded that he was not competent to make a determination of materiality. He advised the parties that he would like to discuss E.H.'s records with Dr. Krummel, commenting that he would make a record of "some sort" of the conversation. The parties agreed. Defense counsel submitted a list of questions for Judge Perlich to ask Dr. Krummel.

¶ 40.  After his conversation with Dr. Krummel, Judge Perlich summarized the conversation for the parties and concluded that the information in E.H.'s records was not relevant. The only thing available for appellate review is Judge Perlich's summary of that conversation.

¶ 41.  Judges are human, therefore fallible. Although we have the utmost respect for Judge Perlich and other circuit court judges, it is incumbent upon us to recognize the fallibility of human memory. Just last month, in *State v. Ramos*, 211 Wis. 2d 12, 564 N.W.2d 328 (1997), this court reviewed a record that revealed that a judge erred in recalling the words of a juror. During *voir dire*, the prospective juror had stated that she did not think she could be fair to the defendant. Moments later, the judge concluded that she had stated that she could be fair. We reviewed the record. The judge erred. The error would not have been revealed nor corrected without benefit of a recorded transcript.

¶ 42.  *Ramos* was a relatively simple case. The case before us today is much more complex. Solberg claims that E.H.'s psychological and medical records will reveal that she has an impaired ability to perceive and relate the truth. R.60:2. He also claims that E.H.

393

has a history of reporting sexual abuse by men with whom she has had a consensual sexual relationship.

¶ 43.   In determining whether E.H.'s medical and psychological records had any independent probative value, Judge Perlich was called upon to review and analyze pages and pages of medical and psychological notes and reports. He then questioned Dr. Krummel about the records, asking his own questions, and questions submitted by the defense. Finally, he summarized this conversation for the parties:

> First of all, counsel, I did have a conversation with the doctor. I'd like to put on the record what we discussed.
>
> I did ask him all of the questions that [defense counsel] had asked me to ask in her November 19th letter. I'll try and summarize this as succinctly as possible what was discussed.
>
> In essence, she was experiencing a flashback, which means that a person is re-experiencing a past event.
>
> At times she would report a past sexual assault of a particular person—or by a particular person, and she reported that particular person. There was no triggering event, although he did indicate that it's possible that sexual contact could trigger a flashback. It's speculative, but not out of the realm of possibility.
>
> The part that I found most important was Question Number 8, that is, How would this affect the patient's perception of reality? And in the doctor's opinion, she would know reality at all times. She would be able to identify the flashback, identify that it was a flashback, and recognized it as such. During that time she would perceive reality at all times. She would be kind of anxious and upset and would

curl up into a ball and would report that she was having a flashback. She would be given support and perhaps medication, and it would pass in a short time, perhaps half an hour.

As to Question Number 10 and 11, he couldn't say, that is, Is it possible that the patient believed that she said no out loud and really didn't? No opinions regarding some of the other questions, speculative at best.

Number 16, it's possible that a person might not know that she was experiencing a flashback. Another person, a third person, might not know that she was experiencing a flashback, but she would know.

So, as I see it, she knew full well when she was having a flashback. She was able to tell reality from the flashback.

I don't see anything, with that explanation, in her prior medical records that in any way helps or assists the defense.. . .I see nothing that requires disclosure.

R.64:2–5. This summary of Dr. Krummel's explanation of E.H.'s condition, at the very least, fails to explain evidence in the alleged victim's medical records that E.H. did not always perceive reality.

¶ 44. Notes from her counselor reveal a very troubled past, some of it coterminous with her relationship with the defendant. The sealed medical records reveal serious mental health issues including the "flashback" information that had been revealed to the defense before the trial. While I do not wish to disclose, in the context of this opinion, the contents of those records, they point to mental health problems, including disassociation from reality, that very well may have been required to be disclosed to the defense under *Shif-*

*fra,* depending on the specific answers of the doctor during his private interview with the judge. Much seems irreconcilable with what the judge related regarding his conversation with Dr. Krummel.

¶ 45.    Dr. Krummel's explanation of the medical records is of great importance to this case. E.H. is the sole complaining witness. Solberg does not deny having anal intercourse with her on the date in question; his only defense against her accusation is consent. Essentially, this is a case of "he said/she said"; Solberg claims that E.H. consented, and E.H. claims that she did not consent. Yet, the sealed record reveals that E.H. has experienced whole tracts of time without connection to reality, and that she has experienced auditory flashbacks to episodes of sexual abuse. Without some explanation on the record from Dr. Krummel, it is exceedingly difficult to conclude other than that the flashbacks and "lost time" episodes are relevant and material, and that the circuit court erred in denying Solberg access to them.

¶ 46.    Adequate review of this record compels a review of that conversation in its entirety, not a judge's recollection of it. We need a transcript. There is none. We have none to review.

¶ 47.    I would hold that in this case, given the profound significance of that conversation, it was plain error to fail to have it recorded.

¶ 48.    We cannot do justice to this case without it. A serious miscarriage of justice might be present here, and as a court we have no way of determining that without a complete record. I dissent.