COURT OF APPEALS
DECISION
DATED AND FILED

September 24, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1866-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2010CF674

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MIGUEL J. ADAMS,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Kenosha County: WILBUR W. WARREN, III and DAVID P. WILK, Judges. *Affirmed*.

Before Neubauer, P.J., Gundrum, and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Miguel J. Adams appeals a judgment of conviction for second-degree sexual assault of a child and incest, as well as an order denying his motion for postconviction relief.  Adams argues on appeal that the circuit court erred when it refused, both pre- and post-trial, to disclose certain of the victim's school records following an in camera review.  He also argues that his attorney was constitutionally ineffective at trial and that he is entitled to reversal in the interest of justice.  We are unpersuaded by Adams's arguments and affirm.

**BACKGROUND**

¶2      Adams was charged with second-degree sexual assault of a child and incest based on his 15-year-old daughter Jennifer's[1] report that Adams had twice placed her hand on his penis while he was lying next to her in her bed one morning.  Based on information obtained during discovery, Adams sought to have Jennifer's psychological records produced for in camera review under the now-defunct *Shiffra*/*Green* framework.[2]  As relevant here, Adams sought for impeachment purposes school counseling records and records of an individualized education program from the school Jennifer was attending.

¶3      Pursuant to WIS. STAT. § 118.125(2)(f), the school produced over 170 pages of subpoenaed records, which were sealed for in camera inspection.

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86 (2023-24), we use a pseudonym for the victim.  All references to the Wisconsin Statutes are to the 2023-24 version.

[2] *See State v. Shiffra*, 175 Wis. 2d 600, 499 N.W.2d 719 (Ct. App. 1993) and *State v. Green*, 2002 WI 68, 253 Wis. 2d 356, 646 N.W.2d 298, *overruled by State v. Johnson*, 2023 WI 39, 407 Wis. 2d 195, 990 N.W.2d 174.  Despite Adams's trial counsel relying on the *Shiffra*/*Green* framework as the basis for the defense motion, on appeal Adams argues that *Shiffra*/*Green* and *Johnson* are irrelevant to the issues presented.  Because we reject Adams's arguments on other grounds, we do not address whether the records at issue are otherwise exempt from disclosure under *Johnson*.

Following that inspection, the circuit court concluded that five pages from the records had at least minimal relevance, and it forwarded those pages to defense counsel by letter.

¶4      The trial was largely a credibility contest between Jennifer and Adams, both of whom testified.  The defense posited that Jennifer was lying.  Through the testimony of Adams's relatives and an ex-girlfriend regarding Jennifer's overly affectionate attitude toward Adams and her curiosity about his genitals, the defense sought to portray Jennifer as demonstrating some sexual interest in Adams.  The State emphasized Jennifer's lack of motive to lie and asserted that Adams's mother Yolanda, with whom Adams was living at the time of the inappropriate touching, had influenced the relatives' testimony.  The jury returned guilty verdicts on both counts.

¶5      Adams was appointed postconviction counsel, who requested copies from the circuit court of the five pages of school records that had been disclosed to trial counsel.  What postconviction counsel inadvertently received was not only the five pages of records that had been disclosed during pretrial proceedings, but the entire contents of the school file submitted for in camera inspection.  In some of the previously undisclosed pages, postconviction counsel argued she found "references quoting the accuser's mental health treatment records and other references that would be extremely helpful to the defense in at least two or three separate ways."

¶6      Following additional briefing and a hearing, the circuit court found that the entire file of school records had been released inadvertently, and it ordered the documents returned.  Moreover, the court prohibited Adams's use of the

inadvertently released information to form the basis of a new request for postconviction or appellate relief.

¶7    Adams then filed a postconviction motion challenging the circuit court's pretrial disclosure of only five pages of school records. Adams stated his belief that other, nondisclosed records contained information material to the credibility or competency of the victim, and he argued that the court therefore erroneously exercised its discretion when it performed its WIS. STAT. § 118.125 review, violating Adams's right to present a complete defense. Relatedly, Adams sought postconviction discovery of the school records and de novo review of the records by the postconviction court to ascertain whether additional records should be disclosed and a new trial ordered. Adams also alleged that his trial counsel was constitutionally ineffective for not presenting phone records from his brother Andre and his girlfriend, and for not adequately preparing Yolanda and Andre for their trial testimony.

¶8    The circuit court held a *Machner* hearing[3] at which Yolanda and Adams's trial counsel testified. The court denied the postconviction motion, first reciting evidence from the trial and concluding that there was ample evidence to support the jury's verdicts. Second, the court determined that the pretrial disclosure of the school records was made pursuant to an appropriate exercise of discretion, and there was "no basis for this Court to redo the pretrial in-camera inspection." Third, the court concluded that Adams's trial counsel was not deficient in preparing the case or witnesses, that poor witness performance at trial was not indicative of deficient performance, and that none of the alleged

---

[3] *See* **State v. Machner**, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

deficiencies in trial counsel's representation prejudiced Adams. The court further determined that there was no basis for a retrial in the interest of justice. Adams now appeals.

## DISCUSSION

¶9 On appeal, Adams raises numerous arguments, which we categorize in three ways. First, we address together Adams's challenges to the circuit court's pretrial partial disclosure of school records and to the court's postconviction refusal to conduct a de novo reinspection of the records. Second, we address Adams's various claims of ineffective assistance of counsel. Third, we address Adams's assertion that he is, as a result of various errors, entitled to a new trial in the interest of justice. For the following reasons, we conclude that Adams is not entitled to relief.

> I. *None of Adams's arguments relating to the circuit court's review of Jennifer's school records persuade us that reversal is warranted.*

¶10 Much of Adams's appellate briefing revolves around the circuit court's duties and role under WIS. STAT. § 118.125 as it pertains to the disclosure of school records. Under paragraph (2)(f), confidential pupil records that are subpoenaed must be provided to a court for in camera inspection.[4] "The court may turn said records or parts thereof over to parties in the action or their

---

[4] "Pupil records" are defined so as to exclude those records "necessary for, and available only to persons involved in, the psychological treatment of a pupil." WIS. STAT. § 118.125(1)(d)2. The parties do not directly address—at least, not in a comprehensive and detailed manner this court would expect when dealing with issues of confidentiality and privilege—whether any of the additional records sought by Adams would be excluded under this subdivision. Accordingly, we do not further address that issue.

5

attorneys if said records would be relevant and material to a witness's credibility or competency." *Id.*

¶11    Addressing these requirements, we have said that a circuit court's "gatekeeper role" under WIS. STAT. § 118.125(2)(f) "is to protect the privacy of the pupil whose records are sought, releasing only those records which may concern a specific witness's credibility or competency." *S.P.A. ex rel. Ball v. Grinnell Mut. Reinsurance Co.*, 2011 WI App 31, ¶12, 332 Wis. 2d 134, 796 N.W.2d 874.  We review a court's decision to release or withhold records for an erroneous exercise of discretion.  *Id.*, ¶14.  We will affirm a discretionary decision if the circuit court examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach.  *Barland v. Eau Claire County*, 216 Wis. 2d 560, 571, 575 N.W.2d 691 (1998).

¶12    On this Record, we perceive no basis to overturn the circuit court's pretrial exercise of discretion in determining that five records were minimally relevant and material to Jennifer's credibility or competency.  The court held a hearing at which it heard argument from both the school and defense counsel regarding the proper process under WIS. STAT. § 118.125.  The school disclosed the records to the court, the court reviewed them, and the court disclosed any records it concluded had minimal relevance.

¶13    Relying on *State v. Solberg*, 211 Wis. 2d 372, 564 N.W.2d 775 (1997), Adams argues that the postconviction court erred by refusing to conduct a de novo in camera review of the school records.  Even assuming *Solberg* retains

some precedential authority,[5] it is inapt here because it resolved only whether the court of appeals, not a postconviction court, had the authority to examine the records that had been disclosed for in camera review. Our supreme court held that "[i]f the circuit court had the authority to review the privileged records, then the court of appeals also had the authority to do so." *Id.* at 383.

¶14    The supreme court did not, however, decree that it is necessary (or even appropriate) for a circuit court to review its own exercise of discretion in the postconviction context. That is typically a task for this court. *See State v. Echols*, 2013 WI App 58, ¶14, 348 Wis. 2d 81, 831 N.W.2d 768. Thus, Adams's asserted "due process right to receive meaningful review of the circuit court's pre-trial in-camera inspection" is ensured by this court performing its error-correcting function, which includes our examination of the records that were provided to the circuit court. *See id.*, ¶¶22-23; *Solberg*, 211 Wis. 2d 372, 383.

¶15    We conduct our review under the erroneous exercise of discretion standard, not a de novo standard. *See Echols*, 348 Wis. 2d 81, ¶14. Additionally, even if we conclude the circuit court erroneously exercised its discretion, Adams is not entitled to reversal unless the error affected his substantial rights. *See id.*, ¶15. An error affects a party's substantial rights if there is a reasonable possibility that the error contributed to the outcome of the case. *Id.*

¶16    Adams points to eight pages of school records that were not initially disclosed and, in his view, bear upon Jennifer's credibility and competency.[6] The

---

[5] *State v. Solberg*, 211 Wis. 2d 372, 564 N.W.2d 775 (1997) was overruled by *Johnson*, at least insofar as it represented an approval of the *Shiffra*/*Green* framework.

[6] Because the school records remain confidential, we discuss them only at a high level of generality.

analysis called for under WIS. STAT. § 118.125(2)(f) is for relevancy and materiality. Only in Adams's reply brief does he explain why the contents of the undisclosed records satisfied these standards, but his arguments in this regard are summary, do not directly address the meaning of the relevancy and materiality statutory provisions, and often refer to contextual information that was not available to the circuit court at the time of its decision, including medical studies and the evidence adduced at trial. In any event, Adams has not demonstrated that the court erroneously exercised its discretion at the pretrial stage by concluding that the undisclosed records were not relevant and material to a witness's competency or credibility.[7]

¶17    Lastly, Adams argues a host of the State's response arguments have been waived and/or forfeited. Adams appears to rely on the principle that an appellate court will not consider issues raised for the first time on appeal. *See Allen v. Allen*, 78 Wis. 2d 263, 270, 254 N.W.2d 244 (1977). But that rule generally applies to the party alleging error. *See id.* In contrast, the respondent can raise additional arguments—even those not raised previously—as grounds for affirming a circuit court's decision on appeal. *Frey Constr. & Home Improvement, LLC v. Hasheider Roofing & Siding, Ltd.*, 2025 WI App 4, ¶55, 414 Wis. 2d 740, 17 N.W.2d 88 (2024). Additionally, to the extent Adams argues the State has conceded issues relating to the pretrial records disclosure by failing

---

[7] To be clear, this court has reviewed the records, as is our obligation under the erroneous exercise of discretion standard. Having resolved the issue on narrower grounds, we do not address the State's invitation to insert a constitutionally grounded "compelling need" requirement into WIS. STAT. § 118.125(2)(f). *See State v. Castillo*, 213 Wis. 2d 488, 492-93, 570 N.W.2d 44 (1997).

to respond, we disagree. *See* ***Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.***, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979).

> II.    *Adams has not demonstrated that his trial counsel provided constitutionally ineffective assistance.*

¶18    The Sixth Amendment guarantees a defendant the effective assistance of counsel. ***State v. Savage***, 2020 WI 93, ¶27, 395 Wis. 2d 1, 951 N.W.2d 838. We review an ineffective assistance of counsel claim using a mixed standard of review. *Id.*, ¶25. The circuit court's factual findings, including those regarding trial counsel's conduct and strategy, will not be overturned unless they are clearly erroneous, but we review de novo whether counsel's conduct constitutes constitutionally ineffective assistance. *Id.*

¶19    To prevail on an ineffective assistance claim, the defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Id.*; *see also* ***Strickland v. Washington***, 466 U.S. 668, 687 (1984). If the defendant fails to establish either prong, we need not address the other. ***Savage***, 395 Wis. 2d 1, ¶25.

¶20    To demonstrate deficient performance, the defendant must show that his or her attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.*, ¶28. We presume that counsel's conduct fell within the wide range of reasonable professional assistance, and we will grant relief only upon a showing that counsel's performance was objectively unreasonable under the circumstances. *Id.* Prejudice is demonstrated by showing a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Id.*, ¶32.

¶21    Adams emphasizes that the key issue at trial was Jennifer's credibility in accusing him of the inappropriate touching.  He argues his trial counsel performed an inadequate investigation, erred in the preparation of the case for trial, and failed to sufficiently prepare certain defense witnesses for their trial testimony.

¶22    Adams's primary claim appears to be that his trial counsel failed to discover phone records that would have impeached Jennifer's testimony.[8]  At trial, Jennifer denied placing a call to Andre after she met with the police.  Andre, on the other hand, testified that Jennifer had called him the day after the incident.  Andre stated that Jennifer seemed "calm and collected" as she recounted what happened and stated that she hoped she could continue to spend time with Andre and his family.

¶23    The prosecutor challenged Andre regarding why he did not have records of the phone call to corroborate his testimony.  At closing, defense counsel attempted to address the lack of corroborating evidence, telling the jury that up until Jennifer testified, Adams did not believe the "mere fact that [Jennifer] called [Andre] would even be an issue."  Postconviction, Adams obtained Andre's phone records, which showed a three-minute incoming call from Jennifer's mother's number at approximately the time Andre testified to.

¶24    Adams has failed to demonstrate deficient performance or prejudice as a result of his trial counsel's handling of Andre's phone records.  The records

---

[8] On appeal, Adams's contentions appear to relate to records of phone calls, and not text messages that were also the subject of some trial testimony.  In any event, Adams's brief does not direct us to any documentation of text messages, without which it would be difficult to demonstrate constitutional prejudice.

were of limited value, as they did not demonstrate that Jennifer was the caller. At best, the records show only that a call was placed from Jennifer's mother's phone to Andre's phone a few hours after the sexual assault. While the records might have added some inferential support for the idea that Andre was telling the truth about receiving a phone call from Jennifer, they did not conclusively show that Jennifer was lying.

¶25 The phone records also had marginal impeachment value because Andre's testimony regarding the contents of the call was not highly damaging to Jennifer's credibility.[9] He testified that it was "a very awkward conversation" and her tone appeared odd under the circumstances. Andre acknowledged they did not spend much time talking about what actually happened, and, most importantly, he did not state that Jennifer had recanted her accusation against Adams at any point during the brief call.

¶26 Finally, any arguable prejudicial impact of failing to obtain the phone records in advance of trial was mitigated by defense counsel's closing statement to the jury. Counsel explained to the jury that the defense was surprised at trial to learn that Jennifer was contesting the fact of the call.[10] On this Record, we conclude there is neither deficient performance nor a reasonable probability of a different result had the phone records been admitted into evidence at trial.

---

[9] Again, based upon the relative unimportance of Andre's testimony, we reject Adams's similar claim that Adams's defense counsel was deficient when preparing Andre for his trial testimony.

[10] Adams, for his part, does not explain why this was an unreasonable assumption by his defense counsel, particularly in light of the circuit court's observation that "it is unreasonable to require an attorney to assume that each fact will be contested and documentary evidence will be necessary."

¶27 Adams also argues that his trial counsel erred by relying on Yolanda's "pre-trial case-prep assistance although he knew she would be an 'important' defense witness subject to outcome-dispositive credibility attacks." At closing, the prosecutor noted that "a variety of Adams['s] relatives and ex-girlfriends" used the same phrases and made the same word choices, suggesting those witnesses had been coached by Yolanda.

¶28 Adams also suggests his trial counsel was deficient when preparing Yolanda for her testimony. The circuit court found that at trial, Yolanda "performed poorly, appeared unreliable and was combative." The court determined that Adams had failed to demonstrate that his trial counsel could have "ameliorated the negative impact of these witnesses short of not calling them."

¶29 We agree with the State that any allegations of constitutionally ineffective assistance regarding Yolanda's role in case preparation and her trial performance are wholly speculative. Adams has not established that a reasonably competent attorney would not have relied on Yolanda's assistance when preparing the defense case. Nor has he established that Yolanda would have performed better at trial had Adams's counsel done something different. Indeed, even on appeal Adams offers no explanation of how a constitutionally effective attorney might have avoided the withering cross-examination to which Yolanda was subjected.

III. *Adams is not entitled to a new trial in the interest of justice.*

¶30 Alternatively, Adams seeks discretionary reversal under WIS. STAT. § 752.35. This court may exercise its authority under that statute whenever the real controversy has not been fully tried or whenever it is probable that justice has for any reason miscarried. *Vollmer v. Luety*, 156 Wis. 2d 1, 19, 456 N.W.2d 797

(1990). For the reasons articulated above, Adams argues the real controversy about Jennifer's credibility and competency was not fully tried, and justice has miscarried.

¶31 We exercise our power of discretionary reversal sparingly, and "only in exceptional cases." *Id.* at 11. Having rejected Adams's argument that the circuit court erroneously exercised its discretion during the in camera review of the school records, we conclude this is not an exceptional case warranting the exercise of our discretionary reversal authority.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.