STATE of Wisconsin, Plaintiff-Respondent,

v.

James W. CONLEY,† Defendant-Appellant.

Court of Appeals

*No. 87–0318–CR. Submitted on briefs August 21, 1987.—*
*Decided September 1, 1987.*

(Also reported in 416 N.W.2d 69.)

† Petition to review denied.

For defendant-appellant, there were briefs by *Charles Bennett Vetzner,* assistant state public defender, of Madison.

For plaintiff-respondent, there was a brief by *Donald J. Hanaway,* attorney general, and *Sharon Ruhly,* assistant attorney general, of Madison.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   James Conley appeals a judgment convicting him of second-degree sexual assault, in violation of sec. 940.225(2)(e), Stats., and incest, in violation of sec. 944.06, Stats., and an order denying his motions for postconviction relief. The primary issue is whether the trial court denied Conley his federal and state constitutional rights of confrontation by placing a blackboard between Conley and his accuser when she testified against him at trial. Other issues are whether the trial court erred by admitting other acts evidence, admitting certain expert testimony, failing to state adequate reasons for the sentence imposed, and reconsidering Conley's sentence. We resolve all issues against Conley and affirm.

## I.  CONFRONTATION

The state charged Conley with having sexual contact and intercourse with his daughter. At a conference prior to the presentation of evidence at the jury trial, the following discussion occurred:

> THE COURT:  Gentlemen, for the record, there has been a request that I put the blackboard up as a shield between the complaining witness and the

Defendant. We've talked about this in the past. We might even have done it at the last hearing. I can't recall. I have no objections to that unless the parties are not requesting it anymore.

Are you still requesting that, Mr. Freeburg [the prosecutor]?

MR. FREEBURG: Um, your Honor, I think I would still request that.

THE COURT: Okay. Bring the jury in.

MR. EARLE [defense counsel]: I'd object to it.

THE COURT: Okay.

MR. EARLE: On confrontation grounds.

THE COURT: Okay.

Subsequent to the trial court's ruling, it gave the following special instruction to the jury before the daughter began her testimony:

Ladies and Gentlemen of the Jury, I have had a request by the District Attorney in this case to put up the blackboard as a shield that the witness did not want to testify in the presence of her father, so pursuant to my rules I have ordered the Bailiff to place a blackboard in front of the witness.

Conley contends that confrontation requires that the defendant have a literal face-to-face view of the testifying witnesses. We conclude that although the provisions reflect a preference for a face-to-face confrontation, the use of the blackboard under the facts of this case was harmless error.

■ The confrontation clause of the sixth amendment to the United States Constitution[1] provides:

> In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.

Article I, sec. 7, of the Wisconsin Constitution similarly provides:

> In all criminal prosecutions the accused shall enjoy the right ... to meet the witnesses face to face.

Despite the difference in language, however, the Wisconsin Supreme Court has interpreted the confrontation clause of the Wisconsin Constitution consistent with the United States Supreme Court's interpretation of the sixth amendment confrontation clause. *State v. Burns,* 112 Wis. 2d 131, 144, 332 N.W.2d 757, 764 (1983) (citations omitted).

■ The functional purpose of the confrontation clause is to promote reliability in a criminal trial by ensuring the defendant a meaningful opportunity for cross-examination. *Kentucky v. Stincer,* — U.S. —, 107 S. Ct. 2658, 2664 (1987) (citing *Lee v. Illinois,* — U.S. —, 106 S. Ct. 2056 (1986)). This opportunity to cross-examine the accuser presupposes the presence of the defendant at trial, ensuring that convictions will not be based on the charges of unseen, unknown, and thus unchallengeable individuals. *Lee,* 106 S. Ct. at 2062. It

---

[1] The confrontation clause of the sixth amendment applies to the states through the fourteenth amendment. *Pointer v. Texas,* 380 U.S. 400, 403 (1965).

is apparent that the historic distrust of secret proceedings led to the formulation of the current requirements, expressed in the leading case of *Mattox v. United States,* 156 U.S. 237, 242–43 (1895):

> The primary object of the constitutional provision in question was to prevent depositions or ex parte affidavits ... being used against the prisoner in lieu of a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

The rights of confrontation, however, are not absolute. *State v. Olson,* 75 Wis. 2d 575, 588, 250 N.W.2d 12, 19 (1977). Many constitutionally approved and recognized uses of evidence clearly indicate that the right to be confronted with the witness is not a literal face-to-face requirement. *See State v. Lenarchick,* 74 Wis. 2d 425, 436, 247 N.W.2d 80, 87 (1976). While the confrontation clause reflects a preference for face-to-face confrontation, it "must occasionally give way to considerations of public policy and the necessities of the case." *Mattox,* 156 U.S. at 243. Competing interests, if closely examined, may warrant dispensing with confrontation at trial. *Ohio v. Roberts,* 448 U.S. 56, 64 (1980).

For example, there could be nothing more contrary to the letter of the confrontation clause than the admission of dying declarations. Yet it has long been held as competent testimony. On balance, the testimo-

ny is presumed reliable because the expectation of death is said to remove all temptation of falsehood. As the Court reasoned in *Mattox,* 156 U.S. at 243:

> [G]eneral rules of this kind, however beneficent in the operation and valuable to the accused, must occasionally give way to considerations of public policy and the necessities of the case. To say that a criminal, after having once been convicted by the testimony of a certain witness, should go scot free simply because death has closed the mouth of that witness, would be carrying his constitutional protection to an unwarrantable extent. The law in its wisdom declares that the rights of the public shall not be wholly sacrificed in order that an incidental benefit may be preserved to the accused.

Similarly, it has long been settled that a living person may be "unavailable" at the time of trial. Prior testimony may be admissible, for example, in cases of then existing mental or physical illness, certain absences from the jurisdiction, or lack of memory. *See, e.g.,* sec. 908.04, Stats.; 5 *Wigmore on Evidence* §§ 1395–96, 1403–13 (Chadbourn rev. ed. 1974).

Thus, if a witness is "unavailable" and has given testimony at previous judicial proceedings against the same defendant who was subject to cross-examination, the confrontation clause is satisfied. *Lenarchick,* 74 Wis. 2d at 436, 247 N.W.2d at 87. The admissibility of prior testimony is justified primarily because "the right of cross-examination initially afforded provides substantial compliance with the purposes behind the confrontation requirement." *Barber v. Page,* 390 U.S. 719, 722 (1968).

The sexual assault victim-witness presents a special concern. The public's interest in bringing to

trial the alleged perpetrator must be balanced against the well-being of the victim-witness, as well as the threatened infringement of confrontation rights. These competing interests have been closely scrutinized by courts and legislatures, and various procedural changes have been implemented or proposed to alleviate the victim's claim of danger or fear, while at the same time preserving the public policy in favor of having the witness testify. *See, e.g.,* Libai, *The Protection Of The Child Victim Of A Sexual Offense In The Criminal Justice System,* 15 Wayne L. Rev. 977 (1969); Parker, *The Rights of Child Witnesses: Is The Court A Protector Or A Perpetrator?,* 17 New Eng. L. Rev. 643 (1982).

For instance, the trial court presently has discretionary power to limit cross-examination to protect the mental well-being of the victim-witness. Rape shield laws, *e.g.,* sec. 972.11, Stats., and videotaped depositions when the child witness is psychologically unavailable to testify in the courtroom, sec. 967.04(7), Stats., illustrate that limitations on confrontation will be tolerated.

Indeed, the Wisconsin Supreme Court has urged courts and lawyers to "use the tools available to the criminal justice system to eliminate or lessen the burden on [victim-witnesses] while making [their] testimony available in the criminal proceeding." *State v. Gilbert,* 109 Wis. 2d 501, 517, 326 N.W.2d 744, 751 (1982); *see also State v. Burns,* 112 Wis. 2d 131, 164, 332 N.W.2d 757, 774 (1983). In *Gilbert,* the court stated that the circuit court has the power, within constitutional limits, to alter courtroom procedures to protect the emotional well-being of the child witness. *Id.* at 517, 326 N.W.2d at 752. In fact, the very solution utilized in the present case, physically blocking the

witness's view of the defendant, was one of the several "solutions" noted by the court in *Gilbert* in stressing its reluctance to completely excuse the victim-witness from testifying at the trial. *See id.* at 518 n. 24, 326 N.W.2d at 752 n. 24.

Conley disputes the appropriateness of altered courtroom procedure in general, and argues that the use of the blackboard was inappropriate in the present case. He asserts that there was no finding that the traditional courtroom procedures were contrary to the victim-witness's best interests.

■

We acknowledge that the record in this case reveals no direct evidence of necessity at the time of trial.[2] For review purposes, the trial court must explicitly state the basis for its ruling regarding courtroom modification. Altered procedure is too important to be established by inference from the trial court's action. *Cf. State v. Gollon,* 115 Wis. 2d 592, 601, 340 N.W.2d 912, 916 (1983). Here, the record is silent regarding to what degree the court observed the child immediately prior to her testimony at trial or whether the court had the benefit of others' observations at that time.[3]

---

[2]The *Gilbert* court never addressed the question of how the trial court is to determine, from the facts gathered, what if any courtroom modifications are appropriate. What we draw from the opinion is that the analysis is to proceed on a continuum toward unavailability. The trial court, in its discretion, may then shape the modifications according to the perceived requirements of the case.

[3]We do not believe expert medical testimony is essential to this determination. *See State v. Drusch,* 139 Wis. 2d 312, 319, 407 N.W.2d 328, 331 (Ct. App. 1987).

■
We note that at the preliminary hearing, when asked to testify as to what happened, the daughter stated, "I can't say it. I can't." Later, at another conference regarding reopening the preliminary hearing, the court remarked that "I have a thirteen, fourteen-year-old girl in the jury room right now crying her heart out." However, in the absence of evidence of the witness's present condition at the time of trial, it would amount to speculation for this court to determine whether a rational basis existed for the trial court's exercise of discretion in utilizing the blackboard. We conclude, therefore, that the trial court erred by determining on an empty record that the witness required courtroom modification prior to her trial testimony.

■
Nevertheless, we conclude that the error is harmless. The error here affects constitutional rights. However, constitutional errors may be harmless. *Chapman v. California,* 386 U.S. 18, 22 (1967). The harmless error test focuses on whether the error undermines our confidence in the outcome of the case. *State v. Grant,* 139 Wis. 2d 45, 53, 406 N.W.2d 744, 747 (1987) (citing *State v. Dyess,* 124 Wis. 2d 525, 545, 370 N.W.2d 222, 232 (1985)). In Wisconsin, the supreme court recently attempted to stress a common-sense approach to whether an error seriously undermined confidence in a verdict. *See Grant,* 139 Wis. 2d at 56, 406 N.W.2d at 749 (Heffernan, C.J., concurring). We conclude that the error in the present case does not seriously undermine our confidence in the verdict. In examining the purposes of the confrontation clause, it is clear that Conley's constitutional rights were significantly preserved.

First, the trial court never declared the witness unavailable. This is not a case where an erroneous unavailability determination was made and prior statements were improperly admitted. Here, no prior testimony was admitted into evidence. We point out, however, that had the daughter been unavailable to testify at the trial, her cross-examined preliminary testimony would have been admissible into evidence. *See California v. Green,* 399 U.S. 149, 166 (1970).

The daughter testified at trial in the presence of the defendant, under oath, and subject to full cross-examination. The opportunity to cross-examine is the heart of the confrontation clause. *See Ohio v. Roberts,* 448 U.S. 56, 63–64 (1980); *Pointer v. Texas,* 380 U.S. 400, 406–07 (1965). The right of confrontation is "not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination." *Gaertner v. State,* 35 Wis. 2d 159, 166, 150 N.W.2d 370, 374 (1966).

Finally, the record indicates that the view of neither the jury nor the judge was impeded by the blackboard. The jury had the opportunity to observe the witness and appraise her credibility and demeanor.

■

Contrary to Conley's assertions, it would be incorrect to exclude the witness's entire testimony when the significant purposes of confrontation were preserved. The use of the blackboard under the circumstances of this case does not undermine our confidence in the verdict. Furthermore, we conclude that the special instruction did not inappropriately influence the jury or had such slight effect as to be de minimus. *See Dyess,* 124 Wis. 2d at 542, 370 N.W.2d at 231. The error was harmless.

## II. OTHER ACTS EVIDENCE

During a conference outside the jury's presence, the prosecutor stated that he desired to introduce evidence of past sexual conduct between Conley and his daughter. Defense counsel objected, first, that the "rape shield law allows evidence of the complaining witness's past conduct with the defendant only upon prior motion" and, second, that the prejudicial effect of such testimony outweighed its probative value. In making its evidentiary ruling, the trial court relied on the provisions of the rape shield statute, and stated:

> Under 972.11, it says that all evidence of complaining witness's past conduct with the Defendant can be brought in. However, the procedures of 971.31(11) must be followed, and under that section it does say that it is mandatory that it must be done on pretrial motion. ... as I understand in this case from the preliminary hearing transcripts which I have reviewed, there are acts which go back a year or two, possibly; and after reading it over I'm not going to allow those in there because 971.31(11) hasn't been followed, but I'm going to allow in any testimony regarding sexual contact and acts in the spring of 1984, which is the time alleged ....

Thereafter, the daughter testified at trial that Conley had sexual intercourse with her "many times."

Conley claims that the court erred by admitting testimony regarding prior sexual acts with his daughter, without adequately balancing the probative value of the evidence against its prejudicial effect. Conley also argues that the admission of this evidence improperly "boosted" his daughter's credibility. We disagree.

Wisconsin historically has allowed the introduction into evidence of prior sexual acts by the accused with the same person who was the victim in the case being prosecuted. *See, e.g., Proper v. State,* 85 Wis. 2d 615, 629–30, 55 N.W. 1035, 1039–40 (1893); *Lanphere v. State,* 114 Wis. 193, 200–01, 89 N.W. 128, 130–31 (1902); *State v. Mitchell,* 253 Wis. 626, 627, 34 N.W.2d 661, 661 (1948); *Hendrickson v. State,* 61 Wis. 2d 275, 282, 212 N.W.2d 481, 484 (1973). Although the rule established in *Proper* is based on the Wisconsin common law rule of evidence, it is clear that the evidence of prior sexual acts in this case is similarly allowable under the codified rules of evidence.

Section 904.04(2), Stats.,[4] allows the use of other acts evidence when it is not used to show character conformity. Such evidence, however, may be used to determine a person's motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident in committing the charged act. *State v. Fishnick,* 127 Wis. 2d 247, 253, 378 N.W.2d 272, 276 (1985).

Trial courts must currently apply a two-step analysis in determining whether other acts evidence is admissible. First, the trial court must find that the evidence fits within one of the exceptions within sec.

---

[4]Section 904.04(2), Stats., provides:

> Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

904.04(2). Second, the trial court must exercise its discretion to determine under sec. 904.03, Stats., whether the probative value outweighs any prejudice resulting from such evidence. Implicit in this analysis is the requirement that the other acts evidence is relevant. *Fishnick,* 127 Wis. 2d at 254, 378 N.W.2d at 276.

In this case, the trial court did not specifically follow this procedure in admitting the evidence. Therefore, we must independently review the evidence to determine if it supports the trial court's decision to admit the other acts evidence. *State v. Shillcutt,* 116 Wis. 2d 227, 235–36, 341 N.W.2d 716, 719–20 (Ct. App. 1983).

Under the first prong of the analysis, we must determine whether the evidence fits into one of the exceptions provided in sec. 904.04(2). We conclude that the daughter's testimony fits into the classification of motive and intent. Here, the motive for Conley's sexual intercourse or contact with his daughter was sexual gratification. The other acts testimony, if believed by the jury, illuminates Conley's motive for sexual gratification and thus fits within the exceptions under sec. 904.04(2). *See Fishnick,* 127 Wis. 2d at 259–60, 378 N.W.2d at 279; *State v. Friedrich,* 135 Wis. 2d 1, 22–23, 398 N.W.2d 763, 772–73 (1987). Moreover, intent is an element of the crimes charged.[5] Other acts

---

[5]Section 940.225(2)(e), Stats., provides:

> Has sexual contact or sexual intercourse with a person who is over the age of 12 years and under the age of 16 years.

"Sexual contact" is described in sec. 940.24(5)(a), Stats.:

evidence is admissible when such evidence is proba-
tive in showing elements of the specific crimes
charged. *Hough v. State*, 70 Wis. 2d 807, 813, 235
N.W.2d 534, 537 (1975).

Under the second prong of the analysis, the
probative value of the testimony exceeded the prejudi-
cial effect. Undoubtedly, the other acts testimony hurt
Conley's defense, but the prejudice we refer to is the
potential harm in a jury's concluding that, because an
actor committed one bad act, he necessarily commit-
ted the crime now charged. In the present case, the
jury was instructed that the evidence was introduced
not to show that Conley has a certain character or
that he acted in conformity with that character. The
instruction cured any prejudical effect perceived by
Conley. Furthermore, consideration and eventual use
of this cautionary instruction indicates that the trial
court balanced the probative value with the prejudi-
cial effect of this evidence. Finally, the fact that the
trial court admitted the testimony under the rape

---

"Sexual contact" means any intentional touching by the
complainant or defendant, either directly or through clothing by
the use of any body part or object, of the complainant's or
defendant's intimate parts if that intentional touching is either
for the purpose of sexually degrading; or for the purpose of
sexually humiliating the complainant or sexually arousing or
gratifying the defendant or if the touching contains the elements
of actual or attempted battery under s. 940.19(1).

Section 944.06, Stats., provides:

**Incest.** Whoever marries or has nonmarital sexual inter-
course with a person he or she knows is a blood relative and such
relative is in fact related in a degree within which the marriage of
the parties is prohibited by the law of this state is guilty of a Class
C felony.

shield statute, sec. 972.11, did not prejudice Conley since it was properly admissible under sec. 904.04(2). *See Bertrang v. State,* 50 Wis. 2d 702, 707–08, 184 N.W.2d 867, 870 (1971).

Conley also argues that it was error to "boost" the credibility of the accuser by admitting her "uncorroborated, non-specific" claims that Conley acted in the same fashion on prior occasions. Conley is in error. This argument is clearly controlled by the reasoning behind the "greater latitude" standard for admitting other acts evidence in sex crimes cases, particularly in those involving incest and indecent liberties with a minor child. *Fishnick,* 127 Wis. 2d at 257 n. 4, 378 N.W.2d at 278 n. 4; *Proper,* 85 Wis. at 630, 55 N.W. at 1040.

## III. EXPERT TESTIMONY

On direct examination at trial, the daughter justified her long delay in reporting the incident as due to the fact that her mother was not doing anything about it. A child-adolescent mental health counselor testified that sexual abuse is often not reported immediately, that victims forget details and mix up dates, and that it is rare for reports of sexual abuse to be fabricated. Conley objected twice during the testimony. First, Conley objected in a general fashion to the qualification of the mental health counselor as an expert witness. Later, Conley requested a question regarding forgetfulness following trauma be limited to the trauma alleged in the present case. The prosecutor rephrased the question, and there were no further objections.

Conley asserts for the first time on appeal that the testimony of the counselor amounted to an improper opinion that the victim was truthful, and argues that such opinions are improper according to *State v. Haseltine,* 120 Wis. 2d 92, 352 N.W.2d 673 (Ct. App. 1984). Conley's failure to make a timely *Haseltine* objection, however, waived his right to review. *See Allen v. Allen,* 78 Wis. 2d 263, 270, 254 N.W.2d 244, 248 (1977). Conley insists that his initial objection to the counselor's testimony is to be construed as a continued *Haseltine* objection. We conclude otherwise, particularly in view of the absence of a similar claim in Conley's postconviction motion. The burden is upon the party alleging error to establish by reference to the record that error was specifically called to the trial court's attention. *Id.* We decline to review this issue based on a nonspecific and thus unpreserved objection.

## IV. SENTENCING

At sentencing, the judge imposed a sentence of seven years on each count, consecutive. Conley filed a postconviction motion alleging, among other things, that the sentence was unduly harsh and unsupported by valid reasons. At a hearing on the motion, the trial judge stated that he wished to review the file before deciding the sentencing issue. The judge's subsequent written ruling reaffirmed the sentence.

Conley argues that the trial court failed to provide an adequate statement of reasons to justify the sentence imposed. We conclude that the record supports the trial court's sentencing discretion.

Sentencing is a discretionary act reviewable in the same manner as all discretionary acts. *McCleary v. State,* 49 Wis. 2d 263, 277, 182 N.W.2d 512, 519 (1971). There is a strong policy against interference with the discretion of the trial court in passing sentence. *Id.* at 276, 182 N.W.2d at 519. We will not disturb a trial court's sentencing decision when the record indicates the sentence was the product of proper discretion. *Id.* at 281, 182 N.W.2d at 521.

Here, the trial court pointed to the gravity of the offense and explained that "this case fits in that line of serious cases as a relatively severe case." The court considered the need to protect the immediate family group in stating that it could not "punish a person for what he did to one child and then leave him in the home with the other children." The court also indicated that he had read the presentence report recommending against probation. It also weighed the comments of family members and considered the arguments of the prosecution and the defense counsel.

Section 973.15(2), Stats., provides that a court may impose as many sentences as there are convictions, either concurrently or consecutively. The trial court's sentence of consecutive seven-year terms is less than the statutory maximum for sexual assault and incest. On the basis of these factors, we cannot say that the trial court abused its sentencing discretion.

Finally, Conley argues that the trial court abused its discretion by inappropriately reconsidering the sentence. We disagree. The trial court reviewed the transcripts of the trial, the presentence report, and apparently sentences in similar cases. The court did

refer to certain subsequent developments within Conley's family. The court stated that these developments confirmed his impression that Conley's crimes had brought devastating effects on his family. The trial court's language, however, is hardly evidence that it went outside the record or considered irrelevant material in ratifying Conley's sentence. Accordingly, the judgment and order of the trial court are affirmed.

*By the Court.*—Judgment and order affirmed.