PER CURIAM.
¶1 Mark Spietz appeals a judgment, entered upon a jury's verdicts, convicting him of three counts of burglary of a building or dwelling and one count of theft of movable property. Spietz also appeals the order denying his postconviction motion. Spietz argues he is entitled to a new trial based on newly discovered evidence or, alternatively, in the interest of justice. We reject Spietz's arguments and affirm the judgment and order.
BACKGROUND
¶2 An amended Information charged Spietz with three counts of burglary of a building or dwelling and one count of theft of movable property valued between $5,000 and $10,000. As we explain below, the charges arose from allegations that Spietz, under the guise of his employment, broke into an unoccupied home and other buildings on the same property and stole various items, including a purse, a riding lawn mower with disc attachment, a push mower, a trailer, hunting bows, a propane tank, and several all-terrain vehicles (ATVs).
¶3 Spietz worked as a vendor for TruAssets, an asset protection company located in Arizona. On September 1, 2015, Spietz received a written work order to complete an "initial secure" of property located in the Township of Piehl. The property had been the scene of a double homicide several months earlier. The work order instructed Spietz to walk the property, take pictures, and check the locks. The order specifically stated: "Do not remove personal property. Bid to store personal property for 30 days." Elsewhere within the work order, it repeated: "Do not remove personal property or complete debris removal, hazard removal, etc. Submit bids for work needed."
¶4 At trial, Spietz testified that he made four trips to the property. On the first trip, he walked the property and took pictures. Spietz knocked on the front door to the home and no one answered. He then called TruAssets and was instructed to submit his pictures. After receiving a second work order identical to the first, Spietz made a second trip to the property to complete his work.
¶5 During his second trip to the property, Spietz saw a sign on the front door stating the property was "vacant or abandoned." Spietz then gained entry to the home by pushing on the door. He took pictures within the house and ultimately removed a purse, some hunting bows, and "documents" for several ATVs that were parked on the property. He also removed a riding lawn mower, a push mower, an ATV, and a tree stand, and then transported these items to his storage facility. The riding lawn mower was then brought to a small engine mechanic "two units down" from Spietz's storage unit for the purpose of reattaching the mower deck.
¶6 During his third trip, Spietz used a trailer from the property to remove two ATVs from a pole shed. Spietz stored the ATVs at his storage facility and parked the trailer at one of his other properties. On October 18, 2015, Spietz made his fourth and final trip to the property, removed another ATV from the garage, and ultimately placed it in his storage facility.
¶7 Spietz conceded that neither of the two work orders received from TruAssets authorized him to remove personal property from the premises, and he was not allowed to engage in "self-help"-i.e., to take personal property and later bill TruAssets. Spietz, however, claimed that he considered personal property to be "something that you would hold personal to you, obviously; so pictures, albums, stuff like that." Spietz further testified that he left a message with TruAssets advising his employer that he had no way to secure the garage or outbuilding, but he never received a response regarding that issue. According to Spietz, he ultimately removed the various items to secure them.
¶8 The jury heard that during execution of a search warrant at Spietz's home, police discovered that the deceased homeowner's social security card, checkbooks, driver's license, and savings account card had been removed from her purse and left near a computer in Spietz's office. The deceased's insurance card was found on Spietz's kitchen table. The items removed from the subject premises were all located at Spietz's residence, at a separate rental property, or at his storage unit.
¶9 Spietz conceded he told police that he took the purse because he thought his wife would like to have it. The jury also heard Spietz's videotaped police interview in which he stated that he planned to give two of the ATVs to his children. Spietz, however, claimed at trial that this would not have happened unless "the bank deemed that it didn't want any of the property back."
¶10 A jury found Spietz guilty of the crimes charged. Out of a maximum possible sentence of forty-three and one-half years, the circuit court ordered concurrent eighteen-month probation terms with a total of thirty days in jail as a condition of probation.
¶11 Spietz filed a postconviction motion for a new trial based on newly discovered evidence or, alternatively, in the interest of justice. Both claims were based on Spietz's postconviction discovery of a voicemail and a call log. In the voicemail, a TruAssets employee told Spietz that the company had received reports about missing personal property from the Piehl premises. The employee added: "If you can go ahead and give me a call back and maybe, you know, you [have] seen something or someone else taking personal property or if we did a trash out and you accidentally removed this stuff. I do need to know." In turn, the call log showed that from September 17, 2015, to October 22, 2015, there were sixty-five contacts between Spietz and TruAssets, either in the form of outgoing calls, incoming calls, or missed calls. Spietz's postconviction motion was denied after a hearing, and this appeal follows.
DISCUSSION
¶12 Spietz claims the circuit court erred by denying his motion for a new trial on the basis of newly discovered evidence. The decision to grant or deny a motion for a new trial based on newly discovered evidence is committed to the circuit court's discretion. State v. Plude , 2008 WI 58, ¶31, 310 Wis. 2d 28, 750 N.W.2d 42. To obtain a new trial based on newly discovered evidence, a defendant must prove: (1) the evidence was discovered after his or her conviction; (2) the defendant was not negligent in seeking the evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative. Id. , ¶32. If the defendant establishes all four of these factors, then the court must determine "whether a reasonable probability exists that had the jury heard the newly-discovered evidence, it would have had a reasonable doubt as to the defendant's guilt." Id. Whether there is a reasonable probability that a new trial would produce a different result is a question of law we review independently. Id. , ¶33.
¶13 The circuit court determined that Spietz satisfied the four factors set forth in Plude , and we assume without deciding that conclusion was correct. Nonetheless, we conclude there is no reasonable probability that a new trial would produce a different result. The jury heard evidence that the work order was very limited in scope, and Spietz conceded he had no authorization to take property from the premises. Therefore, had the jury heard that TruAssets called to ask if there was a "trash out" order during which property may have been accidentally removed, the jury would have known, based on Spietz's own testimony, that there was no such order. Likewise, had the jury heard that Spietz was in contact with TruAssets in September and October 2015, it would have known-again based on Spietz's testimony-that the contact did not involve a work order instructing Spietz to remove personal property from the premises. Moreover, the call log did not reveal the content of any of the calls, and Spietz testified at the postconviction motion hearing that during any month, he averaged fifty to sixty jobs for TruAssets.
¶14 Spietz nevertheless argues that "the voicemail and call log would be supportive of the defense that the defendant had additional instructions and orders concerning the residence in addition to the instructions set forth in the work order." This argument, however, assumes a defense that Spietz did not make at trial. Spietz conceded at trial that he lacked authority to remove the personal property, but claimed, in his defense, that he took the property to secure it and with the hope that he would later get permission to keep it. Because Spietz acknowledged he never received permission to remove the personal property, this evidence of additional contact with TruAssets is irrelevant to Spietz's defense at trial. Spietz has therefore failed to establish a reasonable probability that a jury, looking at the trial evidence and the new evidence, would have a reasonable doubt as to Spietz's guilt. His newly discovered evidence claim consequently fails.
¶15 Alternatively, Spietz seeks a new trial under WIS. STAT . § 752.35 (2017-18),[1] which permits us to grant relief if we are convinced "that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried." Spietz invokes the first basis for relief, that the real controversy was not fully tried. In order to establish that the real controversy has not been fully tried, Spietz must demonstrate "that the jury was precluded from considering 'important testimony that bore on an important issue' or that certain evidence which was improperly received 'clouded a crucial issue' in the case." See State v. Darcy N.K. , 218 Wis. 2d 640, 667, 581 N.W.2d 567 (Ct. App. 1998) (quoting State v. Hicks , 202 Wis. 2d 150, 160, 549 N.W.2d 435 (1996) ). An appellate court will exercise its discretion to grant a new trial in the interest of justice "only in exceptional cases." State v. McKellips , 2016 WI 51, ¶30, 369 Wis. 2d 437, 881 N.W.2d 258.
¶16 Spietz argues that the jury was denied the opportunity to hear evidence bearing upon an important issue in this case-namely, Spietz's intent when entering and removing the property. The evidence of contacts with TruAssets, however, has no bearing on Spietz's credibility, or whether Spietz truly took the property in order to safeguard it. If Spietz had testified at trial that he was told to remove the personal property, and he had offered postconviction evidence to bolster that testimony, he may have had a persuasive argument that his defense was not fully tried to the jury. As noted above, however, Spietz conceded at trial he was not authorized to remove personal property from the premises. Thus, presentation of the voicemail and call log could only lead the jury to speculate that permission was granted, in the face of Spietz's own testimony to the contrary. Accordingly, we decline to exercise our discretionary authority under WIS. STAT . § 752.35 to grant Spietz a new trial.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.